UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
JAN 1 1 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-630-GWU

SHARON SAYLOR, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Saylor

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Saylor

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

Saylor

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Sharon Saylor, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment, described as "a history of discogenic and degenerative disorders of the back (status post L4-L5 microdiscectomy)." (Tr. 21). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform her past relevant work as a sales clerk and, therefore, was not entitled to benefits. (Tr. 24-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were capable of medium level exertion, and could occasionally stoop, crouch, and climb ladders, ropes, and scaffolds. (Tr. 47). The VE responded that with these restrictions, the plaintiff could return to her past job as a clerk in the jewelry store. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

Mrs. Saylor alleged disability due to back, left hip, and left leg and foot pain resulting from a herniated lumbar disc. (Tr. 33-5, 83). Dr. Philip Tibbs performed surgery in February, 2001, but Mrs. Saylor testified that this had not helped her leg

Saylor

pain, although she was able to straighten up more easily. (Tr. 35-6). She was on pain medication and muscle relaxers which made her feel sleepy and upset her stomach. (Tr. 36-7). In addition, she used a TENS unit. (Tr. 40). She had spent most of her day in a recliner with her legs propped up, and spent most of her time lying down watching TV. (Tr. 37-8).

The plaintiff's treating family physician, Dr. Martha Combs Woolum, submitted office notes reflecting treatment since at least 1998 (e.g., Tr. 217-18), and, after her patient's complaints of severe lower back pain late in 2000, referred her for a December 23, 2000 MRI of lumbosacral spine. (Tr. 145). The MRI showed a herniated disc trapping the L5 nerve root. (Tr. 123). Dr. Combs then referred Mrs. Saylor to the neurosurgeon, Dr. Tibbs (Tr. 142), who performed the L4-L5 lumbar microdiscectomy on February 5, 2001 (Tr. 124). The patient continued to complain of back and leg pain with increasing difficulty in walking (Tr. 147), and a follow-up MRI of lumbosacral spine suggested the growth of scar tissue (Tr. 131). However, Dr. Tibbs did not find significant abnormalities on physical examination in May, 2001, and opined that the plaintiff's problem was probably arthritic in nature. (Tr. 147). He asked her to return only on an "as needed" basis. (Id.).

Dr. Combs Woolum continued to see the plaintiff, and completed a form for the Division of Disability Determinations in January, 2002, stating that the plaintiff had left leg, left L5, and left sacroiliac joint pain, with a reduced range of motion and

8

positive straight leg raising, with slightly decreased strength in the left leg and decreased sensation in the L4, L5, and S1 dermatomes. (Tr. 146).

Dr. Hughes Helm conducted a consultative examination on behalf of the state agency in February, 2002, at which time Mrs. Saylor stated that she had had pain running down the left side of her body to her toes, along with paresthesias and numbness, ever since the surgery. (Tr. 154). Dr. Helm's examination showed positive straight leg raising at 75 degrees with radiculopathy to the left foot, and noted that the plaintiff walked with a left-sided limp, although she had a normal station and did not need an ambulatory aid. (Tr. 155-6). There was some paresthesia in the left foot, but no gross motor, sensory, or reflex deficits, and Mrs. Saylor could bend forward 75 degrees at the waist. (Id.). Dr. Helm concluded that Mrs. Saylor had symptoms consistent with a prior disc herniation and now had "chronic nerve root damage" and left lower extremity radiculopathy. (Tr. 156). She did appear to have impairment in "repetitive" sitting, standing, moving about and also lifting, carrying, and handling objects. (Id.).

A state agency physician, Dr. David Swan, reviewed the record at this point and concluded that Mrs. Saylor could perform medium level exertion with restrictions only on occasional stooping, crouching, and occasionally climbing ladders, ropes, and scaffolds. (Tr. 158-65). In other words, this was the residual functional capacity adopted by the ALJ. Dr. Swan explained his restrictions by emphasizing the negative findings by Dr. Helm, although appearing to grant that the plaintiff continued

to have "significant radicular symptoms" possibly as a result of residual nerve damage. (Tr. 166). He declined to accept the specific restrictions given by Dr. Helm for sitting or handling objects due to a lack of specific data and because the claimant did not allege any impairment for sitting or handling objects. (Tr. 167).[1]

Subsequently, Dr. Combs Woolum submitted additional medical reports indicating that the plaintiff continued to have pain due to a severe compression of her nerve, and she could not walk or stand for any long distances or for extended periods of time, or perform "heavy lifting." (Tr. 170-1).

Another state agency reviewing physician, Dr. John Rawlings, thereupon issued another residual functional capacity report which apparently reiterated Dr. Swan's findings, although the third page of his report is missing in the court transcript. (Tr. 189-25). Dr. Rawlings stated that he gave Dr. Combs Woolum's opinion that the plaintiff could not walk for long distances or sit for extended periods "partial weight," because it was not well supported by objective medical evidence, and that the claimant's pain seemed disproportionate. (Tr. 194).

Following this report, Dr. Combs Woolum submitted two more residual functional capacity assessments, one dated August 14, 2002 (Tr. 258-60), and another dated October 14, 2003 (Tr. 275-6). The two reports are essentially consistent, although in the first the physician indicated a lifting and carrying

---

[1] Although it was not initially one of her prominent complaints, the plaintiff <u>had</u> indicated that her back and hip problem made it painful to sit. (Tr. 99-100).

restriction without specifying an exact amount of weight. However, in the second report, Dr. Combs Woolum limited lifting and carrying to less than 10 pounds, and in both reports limited standing and walking to less than two hours in an eight-hour day and sitting for less than two hours in an eight-hour day, in addition to having non-exertional postural restrictions, restrictions on pushing and pulling, and working around heights, moving machinery, and vibration.

The plaintiff argues on appeal that these restrictions, which would clearly preclude all work, are entitled to controlling weight since they are from the plaintiff's treating physician. Moreover, the plaintiff notes that the state agency physicians, who provided the only functional capacity opinions which specifically support the ALJ's functional capacity finding, did not have the opportunity to review all the evidence from the treating source, and, moreover, that their opinions were apparently based to considerable extent on Dr. Helm's examination, even though he was not licensed at the time. The ALJ had found that Dr. Helm, although he was not licensed in Kentucky at the time of his examination of Mrs. Saylor, was, nevertheless, an acceptable medical source because the "lapse" of his professional license was a "clerical/administrative" problem and unrelated to his professional qualifications. (Tr. 20, footnote 2). However, the Commissioner's regulations state that consultative examinations will be purchased only from a "qualified medical source," which is defined as an individual "currently licensed in the State." 20 C.F.R. Section 404.1519g. "Acceptable medical sources" are defined in 20 C.F.R. Section

11

404.1513 as "licensed." While the report of Dr. Helm might be considered as "evidence from other sources" under Section 404.1513(d), the net effect is that Dr. Combs Woolum was the only examining, acceptable medical source to give an opinion regarding functional capacity, and the state agency reviewers did not have the benefit of a review of the entire record, including all of the opinions of the treating source. See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). For all these reasons, a remand will be required in order to obtain, at a minimum, an opinion from a medical expert with the opportunity to review all of the evidence. While the Court recognizes that Dr. Combs Woolum was a treating source, the evidence of total disability is not so overwhelming that a remand for an award of benefits is indicated.[2]

The decision will be remanded for further consideration.

This the __11__ day of January, 2006.

G. WIX UNTHANK
SENIOR JUDGE

---

[2] The Court also notes that several pages of an October, 2001 examination by Dr. David Hoauge are missing from the transcript. (Tr. 266).